## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-00216-RMR-SBP

JEFFREY T. MACMILLAN, M.D., and
KAREN WENNER, APRN, DNP,

      Plaintiffs,

v.

RURAL PARTNERS IN MEDICINE, LLC, a Colorado Limited Liability Company doing business
as inReach Health,
REGIONAL WEST PHYSICIANS CLINIC, a Nebraska non-profit corporation,
JEFFREY HOLLOWAY, M.D., FACS,
MARTHA STRICKER, and
CHRISTOPER PUSEY,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Susan Prose, United States Magistrate Judge**

      This matter comes before the court on a motion to dismiss for lack of personal

jurisdiction filed by Defendants Regional West Physicians Clinic (the "Clinic"), Dr. Jeffrey

Holloway, and Martha Stricker (collectively, the "Clinic Defendants"). ECF No. 63 ("Motion" or

"Motion to Dismiss"). For the reasons set forth below, this court respectfully **RECOMMENDS**

that the Motion to Dismiss be **GRANTED** and the Clinic Defendants be dismissed from the

action.

## BACKGROUND[1]

The crux of this lawsuit is an employment dispute between Plaintiffs and Defendant

Rural Partners in Medicine, LLC, d/b/a inReach Health ("inReach"). Plaintiffs bring five claims

against inReach, alleging breach of contract and wrongful discharge based on various legal

theories. *See generally* Amended Complaint, ECF No. 58 ¶¶ 76-91, 100-126. The only claim

against the Clinic Defendants (as well as Mr. Pusey, the chief executive officer of inReach)

alleges tortious interference with contract. *Id.* ¶¶ 92-99 (third claim for relief). Because the Clinic

Defendants seek dismissal solely on the basis of lack of personal jurisdiction, *see* Motion at 1,

the court focuses here on the facts relevant to the jurisdictional question.

Plaintiffs reside in Scottsbluff, Nebraska. *Id.* ¶¶ 1-2. Dr. MacMillan is licensed to practice

medicine in Nebraska, and Ms. Wenner holds Nebraska licenses as both an advanced practice

and a registered nurse. *See* HHS License Search - Results (nebraska.gov), last visited November

18, 2023. According to the Colorado Department of Regulatory Agencies website, neither

Plaintiff is licensed to practice in Colorado.[2]

The Clinic is a Nebraska non-profit corporation with its principal place of business in

Scottsbluff, Am. Compl. ¶ 4, as the Clinic's president Dr. Holloway confirms in a sworn

---

[1] The facts in this background section are drawn from the allegations in the Amended Complaint, ECF No. 58, the documents incorporated by reference in the Amended Complaint, and the evidence submitted by the parties in connection with the Motion. Because the Motion seeks dismissal based on lack of personal jurisdiction over the Clinic Defendants, the court considers the evidence submitted by the parties in connection with the Motion and also accepts the well-pleaded facts in the complaint "as true to the extent they are uncontroverted by the defendant's affidavits." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

[2] This court takes judicial notice of the contents of these stage-agency websites. *See Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 108, 1212-13 (10th Cir. 2012).

declaration. Holloway Decl., ECF No. 63-1 ¶ 4. The Clinic conducts its business entirely in

Nebraska and does not maintain any offices in Colorado. *Id.* ¶¶ 6-7. Dr. Holloway resides in

Scottsbluff and does "not live, work, maintain bank accounts, own property, or otherwise

conduct business in the State of Colorado." *Id.* ¶¶ 4-5. The same is true of Defendant Ms.

Stricker, who was the Clinic's chief operating officer at the time relevant to Plaintiffs' tortious

interference claim. Stricker Decl., ECF No. 63-2 ¶¶ 3-4, 7.

Three contracts are relevant to the court's evaluation of the personal jurisdiction question:

- An Agreement for Professional Services ("Master Agreement") between the Clinic and inReach,[3] in which inReach agreed to supply the Clinic and another entity, non-party Regional West Medical Center, with contracted orthopedic services. Am. Compl. ¶ 12; *see also* Holloway Decl., ECF No. 63-1 ¶ 8 and *id.* at 4-54 (Master Agreement with exhibits/amendments). In the Second Amendment to the Master Agreement dated October 14, 2016, inReach agreed to provide Dr. MacMillan to perform orthopedic services for the Clinic. ECF No. 63-1 at 35-41.

- A professional services agreement ("PSA") between inReach and Dr. MacMillan, in which Dr. MacMillan agreed to provide orthopedic services to inReach pursuant to the Master Agreement between inReach and the Clinic. Holloway Decl. ¶ 12; ECF No. 63-1 at 55-70 (PSA); *see also* Am. Compl. ¶ 14.

- A Mid-Level Health Care Provider Service Agreement ("MLPSA") between Plaintiffs and inReach, through which Ms. Wenner agreed to provide nurse practitioner services to the Clinic. Am. Compl. ¶ 16; *see also* Holloway Decl. ¶ 13; MLPSA, ECF No. 63-1 at 71-78.

Plaintiffs' tortious interference claim against the Clinic Defendants is premised on their

---

[3] Defendant Rural Partners in Medicine, LLC, is technically the party to the Master Agreement. For consistency here, the court refers to this entity as inReach, the name under which it does business.

purported interference with the PSA and MLPSA,[4] which allegedly caused inReach "to terminate Plaintiffs without the contractually prescribed notice" under those agreements. Am. Compl. ¶ 95. According to Plaintiffs, throughout the period when they were providing services under the PSA and MLPSA, they repeatedly raised concerns regarding "quality of care and patient safety improvements[.]" *Id.* ¶¶ 28-37. These reports apparently fell on deaf ears. At some point, the Clinic Defendants and Mr. Pusey allegedly "concocted the narrative" that Plaintiffs did not want to participate in "a new business model," to be implemented at the Clinic and Regional West Medical Center, whereby "orthopedic services would be split between an acute care model and an elective model." *Id.* ¶ 38. These actions led to the termination of the PSA and MLPSA—improperly, in Plaintiffs' view—on July 18, 2022. *Id.* ¶¶ 81, 89.

In their Motion to Dismiss, the Clinic Defendants assert that the court lacks personal jurisdiction over each of them pursuant to Federal Rule of Civil Procedure 12(b)(2). *See generally* Motion. Plaintiffs opposed the Motion, ECF No. 68 ("Response"), and the Clinic Defendants replied. ECF No. 70 ("Reply"). Having thoroughly considered the briefing, the applicable law, and the entire docket, the court respectfully recommends that the Motion be granted.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) authorizes the dismissal of a complaint for lack of personal jurisdiction. When a defendant files a motion to dismiss under Rule 12(b)(2), the

---

[4] In the briefing on inReach's and Mr. Pusey's motion to dismiss, ECF No. 61, the parties disagree whether Plaintiffs are properly characterized as independent contractors or employees under the PSA and MLPSA. The court does not address that issue, which has no bearing on its assessment of personal jurisdiction, at this time.

plaintiff bears the burden to establish personal jurisdiction over that defendant. *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citation omitted). Where, as here, the court does not conduct an evidentiary hearing, the plaintiff need only make a prima facie showing to defeat the motion. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (citation omitted). The plaintiff "must make this [prima facie] showing with respect to each of the claims alleged." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020) (citation omitted).

In evaluating whether the plaintiff has made a prima facie showing that personal jurisdiction exists, the court accepts the well-pleaded allegations of the complaint as true. *Wenz*, 55 F.3d at 1505. If the presence or absence of personal jurisdiction can be established by reference to the complaint alone, the court need not look further. The plaintiff, however, may also make a prima facie showing "through affidavits or other written materials." *Id.* (citing *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008)). "If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and 'the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.'" *Wenz*, 55 F.3d at 1505 (quoting *Behagen v. Amateur Basketball Ass'n of U.S.*, 744 F.2d 731, 733 (10th Cir. 1984)) (internal quotation marks omitted).

## ANALYSIS

To establish personal jurisdiction over a nonresident defendant, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state—here, Colorado—"and that the exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment.". *Dental Dynamics*, 946 F.3d at 1228 (citing *Walden v. Fiore*, 571 U.S. 277, 282 (2014)). As to the

first prong of the analysis, "[t]he Colorado Supreme Court has interpreted Colorado's long-arm

statute to extend jurisdiction to the fullest extent permitted by the Due Process Clause of the

Fourteenth Amendment." *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193-94 (Colo.

2005) (discussing Colo. Rev. Stat. § 13-1-124); *accord Old Republic*, 877 F.3d at 903.

Therefore, the jurisdictional analysis collapses into a single due-process inquiry: whether the

exercise of personal jurisdiction over the Clinic Defendants comports with the requirements of

federal due process. *Old Republic*, 877 F.3d at 903.

 "The Due Process Clause protects a [defendant's] liberty interest in not being subject to

the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or

relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe

Co. v. Washington*, 326 U.S. 310, 319 (1945)). The analysis of whether the exercise of personal

jurisdiction comports with due process is two-fold. *See AST Sports*, 514 F.3d at 1057. First, the

court looks to "whether the nonresident defendant has 'minimum contacts' with the forum state

such 'that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *World-

Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296 (1980)). Second, the court "consider[s]

whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of

fair play and substantial justice.'" *OMI Holdings*, 149 F.3d at 1091 (quoting *Asahi Metal Indus.

Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 109 (1987)).

 The "minimum contacts" standard may be satisfied in either of two ways—general or

specific jurisdiction. *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 455 (10th Cir.

1996); *Dental Dynamics*, 946 F.3d at 1229 n.2 (describing general and specific jurisdiction as

"two variants of personal jurisdiction"). "General personal jurisdiction means a court may

exercise jurisdiction over an out-of-state party for any purpose." *Dental Dynamics*, 946 F.3d at

1229 n.2 (citing *Old Republic*, 877 F.3d at 903). By contrast, specific personal jurisdiction

allows a court to "exercise jurisdiction over an out-of-state party *only* if the cause of action

relates to the party's contacts with the forum state." *Id.* (citing *Old Republic*, 877 F.3d at 904)

(emphasis added).

## I.    Personal Jurisdiction

The court examines both categories of "minimum contacts" for the three Clinic

Defendants and concludes that it lacks both general and personal jurisdiction over them.

### A.    General personal jurisdiction

The court begins with the guiding legal principles for general jurisdiction for corporate

and individual defendants.

As for exercising jurisdiction over a corporate entity, because general jurisdiction is not

related to the events giving rise to the suit, a "more stringent" minimum contacts analysis

applies. *OMI Holdings*, 149 F.3d at 1091 (citations omitted). "With respect to a corporation, the

place of incorporation and principal place of business are *paradigm bases* for general

jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quotation omitted) (emphasis

added). Beyond those paradigm grounds, a court must tread carefully in determining whether it

can properly exercise general personal jurisdiction.

General jurisdiction exists when the corporate defendant's contacts with the forum are so

"'continuous and systematic as to render [it] essentially at home in the forum State.'" *Fireman's*

*Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012)

(quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). To be

"at home" in a state for purposes of general personal jurisdiction requires more than a corporation merely having "engaged in a substantial, continuous, and systematic course of business." *Daimler*, 571 U.S. at 138-39. That articulation, the Supreme Court held, is an "unacceptably grasping" formulation of general personal jurisdiction over a corporate defendant. *See id.* at 137-38. To determine whether an out-of-state defendant may be deemed "at home" in the forum state, the Tenth Circuit considers the following factors: (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation. *Kuenzle*, 102 F.3d at 457; *accord Grynberg v. Ivanhoe Energy, Inc.*, 666 F. Supp. 2d 1218, 1230 (D. Colo. 2009), *aff'd*, 490 F. App'x 86 (10th Cir. 2012).

In terms of assessing when an individual defendant is "at home" in a state for purposes of general personal jurisdiction, "an individual is subject to general jurisdiction in her place of domicile." *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. at ---, 141 S. Ct. 1017, 1024 (2021) (citing *Daimler*, 572 U.S. at 137); *Goodyear*, 564 U.S. at 924 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]"). "To establish domicile in a particular state, a person must be physically present in the state and intend to remain there." *Smith v. Cummings*, 445 F.3d 1254, 1260 (10th Cir. 2006); *see also Miss. Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48 (1989) ("[D]omicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there.").

8

***The Clinic.*** Plaintiffs have failed to present the court with a sufficient basis upon which to conclude that the Clinic is "at home" in the District of Colorado.

To begin, it is undisputed on the record here that the Clinic is a Nebraska non-profit corporation with its principal place of business located in Scottsbluff, Nebraska—"paradigm bases" for general personal jurisdiction in Nebraska, not Colorado. *See* Holloway Decl. ¶ 6. Next, applying the *Kuenzle* factors to the facts here, the court finds no basis to conclude that the Clinic is "at home" in Colorado for purposes of general personal jurisdiction.

With regard to the first three factors, the Clinic has provided sworn testimony that it "conducts its business entirely in the State of Nebraska" and "does not solicit business in [Colorado] through a local agent, does not send agents to Colorado on a regular basis to solicit business, and does not hold itself out as conducting business in Colorado." Holloway Decl. ¶ 7.

Plaintiffs seek to counter this evidence with an April 1, 2020 article about virtual healthcare visits offered by the Clinic in the early days of the COVID-19 pandemic. *See* ECF No. 68-1, available at <u>Regional West Physicians Clinic Now Offering Virtual Healthcare Visits | Regional West Health Services (rwhs.org)</u> (last visited November 18, 2023); *see id.* (stating that "Regional West Physicians Clinic is now offering virtual healthcare visits so patients can see their providers from the security of their homes"). The article mentions that Regional West Health *Services*—the entity which owns the Clinic, *see* Holloway Decl. ¶ 12—provides "health care services for the people of western Nebraska, and the neighboring states of Colorado, South Dakota, and Wyoming." *See* ECF No. 68-1. Importantly, the article does not suggest that the Clinic solicits business in Colorado "through a *local office or agents*" or sends "agents *into the state on a regular basis* to solicit business"—the triggering criteria for general personal

jurisdiction under the first two *Kuenzle* factors—and Dr. Holloway states that it does not.
*Kuenzle*, 102 F.3d at 457 (emphasis added); Holloway Decl. ¶ 7. To be sure, the Clinic, located
in a rural area bordering Colorado, may treat (either virtually or in person) some patients who
reside across the state line in Colorado, but that fact does not amount to contacts so "continuous
and systematic" as to render the Clinic "at home" here. As Dr. Holloway averred, "[w]hile [the
Clinic] does, at times, provide medical services to non-Nebraska residents, all the services
provided by [the Clinic] to any such patient *are performed exclusively in Nebraska*." Holloway
Decl. ¶ 8 (emphasis added).

That persons from Colorado may seek health services from an out-of-state entity—
services to be performed not in Colorado but in the state where the provider is located—does not
establish minimum contacts between that entity and Colorado. Consider, for example, a health
care provider of national renown, like the Cleveland Clinic. Under Plaintiffs' theory of
jurisdiction, this court would have personal jurisdiction over that Ohio-based institution and its
employees simply because Colorado residents sometimes seek treatment there. That does not
constitute minimum contacts sufficient to confer general (or specific) personal jurisdiction in this
court. *See DeJesus v. Mohammed*, Civ. No. 12-7007 (NLH/KMW), 2015 WL 1969143, at *6
(D.N.J. Apr. 29, 2015) (finding no minimum contacts sufficient to establish general or specific
jurisdiction in New Jersey over defendants, a Pennsylvania physician and hospital that treated a
New Jersey resident, where defendants were not licensed to practice medicine in New Jersey and
did not operate a facility in New Jersey); *Everhart v. Children's Hosp.*, No. CIV-06-0654
MCA/DJS, 2008 WL 11451893, at *12 (D.N.M. Mar. 21, 2008) (holding that New Mexico had
no personal jurisdiction over Colorado children's hospital that treated a New Mexico patient in

Colorado); *see also Shrader v. Biddinger*, 633 F.3d 1235, 1238 (10th Cir. 2011) (emphasizing

that, for general jurisdiction, "the commercial contacts here must be of a sort that 'approximate

physical presence' in the state—and 'engaging in commerce with residents of the forum state is

not in and of itself the kind of activities that approximates physical presence within the state's

borders'") (citation omitted). Put simply, the Clinic, as a Nebraska non-profit corporation, is not

"essentially at home" in Colorado simply because some Colorado-based patients may seek

medical services in its Scottsbluff, Nebraska facility.

Neither do Plaintiffs' other evidentiary submissions establish that Colorado has general

personal jurisdiction over the Clinic. An undated job posting for a chief financial officer for

Regional West Health Services (the entity which owns the Clinic), Holloway Decl. ¶ 12, simply

reiterates the point that Regional West Health Services provides services for people who live in

western Nebraska and other states, including Colorado. ECF No. 68-2. Similarly unavailing for

purposes of finding general personal jurisdiction over the Clinic are the three articles that

mention affiliations and "partnerships" between Regional West Health Services and several

third-party entities, including UCHealth, based in Aurora, Colorado. ECF Nos. 68-3, 68-4, and

68-5. In these materials, the court finds no evidence showing that the Clinic is soliciting business

in Colorado through a local office or agents; that the Clinic sends agents into the state on a

regular basis to solicit business; or that the Clinic is holding itself out as doing business in

Colorado through advertisements, listings, or bank accounts.

Turning to the last *Kuenzle* factor, Dr. Holloway's sworn testimony that the Clinic's

"volume of business" in Colorado is zero is uncontradicted. Holloway Decl. ¶ 6 (the Clinic

"conducts its business entirely in the State of Nebraska").

To sum up, Plaintiffs have not made a prima facie showing that the Clinic possesses "in-forum contacts so "continuous and systematic as to render [it] essentially at home" in Colorado." *See Daimler*, 571 U.S. at 119 (quoting *Goodyear*, 564 U.S. at 919). This court lacks general personal jurisdiction over the Clinic.

**Dr. Holloway and Ms. Stricker.** The court likewise finds that Plaintiffs have failed to make a prima facie showing that this court has general personal jurisdiction over Dr. Holloway and Ms. Stricker. Critically, neither are domiciled in Colorado. Both reside in Nebraska, and neither "live, work, maintain bank accounts, own property, or otherwise conduct business in the State of Colorado." Holloway Decl. ¶¶ 4-5; Stricker Decl. ¶¶ 3-4, 7.[5] These undisputed facts fail to show that these individuals reside in Colorado, much less that either of them intend to remain in Colorado indefinitely. *See Madison v. Avery*, No. 19-cv-02779-WJM-NYW, 2021 WL 4947239, at *6 (D. Colo. Aug. 9, 2021) (finding that the complaint did not establish general personal jurisdiction over individual defendant because it did not contain "any facts as to [defendant's] domicile—i.e., the state in which he (1) resides and (2) intends to remain indefinitely"); *see also Vora v. Dionne*, No. 22-cv-00572-CNS-MDB, 2023 WL 1784227, at *3 (D. Colo. Feb. 6, 2023), *report and recommendation adopted*, 2023 WL 2446222 (D. Colo. Mar. 10, 2023).

---

[5] Seeming to grasp at straws, Plaintiffs suggest that Ms. Stricker is subject to personal jurisdiction here because she is a native of Golden, Colorado. Response at 2 ¶ 5. Ms. Stricker explains that she has not resided in Colorado since she graduated from high school in 1988 and that she has continuously resided in Scottsbluff, Nebraska, for over twenty years. Supplemental Stricker Decl., ECF No. 70-2 ¶¶ 5-7. The court rejects the unsupported notion that Ms. Stricker's presence in Colorado as a child somehow allows this court to exercise jurisdiction over her nearly forty years later.

Dr. Holloway and Ms. Stricker have no "home" connection to Colorado, precluding this court's exercise of general personal jurisdiction over them.

### B.    Specific personal jurisdiction

"The minimum contacts test for specific personal jurisdiction has two requirements: (1) a defendant must have "purposefully directed its activities at residents of the forum state," *and* "(2) the plaintiff's injuries must arise out of the defendant's forum-related activities." *Dental Dynamics*, 946 F.3d at 1239 (citing *Old Republic*, 877 F.3d at 904). This test governs the jurisdictional analysis for both corporate and individual defendants. *Newsom v. Gallacher*, 722 F.3d 1257, 1269 (10th Cir. 2013) (assessing specific personal jurisdiction over individual defendants pursuant to these standards); *Powers v. Emcon Assocs., Inc.*, No. 14-cv-03006-KMT, 2016 WL 1111708, at *5 (D. Colo. Mar. 22, 2016) (same). And "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 71 n.13 (1984).

With respect to the first requirement for finding minimum contacts, judges on this court adhere to a three-part test for assessing purposeful direction:

> The Supreme Court has developed a tripartite inquiry to determine whether a defendant purposefully directed its activities at a forum state: the presence of (a) an intentional act that was (b) aimed expressly at the forum state with (c) knowledge that the brunt of the injury would be felt in the forum state. *Calder v. Jones*, 465 U.S. 783, 789–90 (1984). The Tenth Circuit has interpreted the "express aim" element to signify that "the forum state itself must be the 'focal point'" of the tort. *Dudnikov* [*v. Chalk & Vermilion Fine Arts, Inc.*], 514 F.3d [1063] at 1075 & n. 9 [(10th Cir. 2008)] (quoting *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1080 (10th Cir. 1995)); *see also Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1191 (D. Colo. 2004).

*Spyderco, Inc. v. Kevin, Inc.*, No. 16-cv-03061-CMA-NYW, 2017 WL 2929548, at *2 (D. Colo.

13

July 7, 2017); *Dental Dynamics*, 946 F.3d at 1231 ("[w]hen analyzing tort-based claims," courts

"look to the harmful effects of [Defendants' conduct] in the forum state to assess purposeful

direction") (cleaned up). Satisfying this inquiry "ensures that a defendant will not be haled into

court in foreign jurisdictions solely as a result of 'random, fortuitous, or attenuated contacts.'"

*AST Sports*, 514 F.3d at 1058 (quoting *Benally v. Amon Carter Museum of Western Art*, 858 F.2d

618, 625 (10th Cir. 1988)). The fact that an out-of-state defendant has committed a tort that

caused economic injury to a forum resident does not necessarily establish the requisite minimum

contacts with the forum state. *Spyderco*, 2017 WL 2929548, at *2

  "With respect to the second requirement [for specific jurisdiction], ensuring the injury

arises out of a defendant's forum related activities makes sure an adequate connection exists

between the forum and the underlying controversy." *Dental Dynamics*, 946 F.3d at 1229 (citing

*Old Republic*, 877 F.3d at 908). The Supreme Court has emphasized that the relationship to the

forum state must arise out of contacts that the "defendant *himself*" creates with the forum state.

*Burger King*, 471 U.S. at 475 (emphasis added).

  Here, the Clinic Defendants argue that specific jurisdiction in Colorado is inappropriate

because the tortious interference claim rests on actions the Clinic Defendants are alleged to have

directed toward Nebraska, not Colorado:

> [T]he Complaint alleges that the Regional West Defendants [the Clinic, Dr.
> Holloway, and Ms. Stricker] (**all Nebraska residents**) and Mr. Pusey, "concocted
> the narrative" that the Plaintiffs (**both Nebraska residents**) did not want to
> participate in the New Model (**to be implemented in [the Clinic's] facility in
> Nebraska**) as a basis for inReach's termination of the Plaintiffs' employment (**in
> Nebraska**) . . . . Plaintiffs' employment was wrongfully terminated during a
> meeting on July 18, 2022, which took place **in Nebraska**.

Motion at 11 (emphasis in original). Plaintiffs' counter-argument that specific jurisdiction

obtains focuses on the contract between the Clinic and inReach—the Master Agreement—which
"creates a continuing obligation for a Colorado company (inReach) to supply [the Clinic] with
health care providers." Response at 9. Plaintiffs contend that the Clinic "not only knew that
inReach was entering into contracts with health care providers to fulfil inReach's contractual
obligation to them, but the [Clinic] Defendants also knew that those provider contracts were
specifically governed by Colorado law and contained Colorado venue provisions." *Id.* at 9. The
court finds that Plaintiffs have failed to carry their burden to make a prima facie showing on
either the purposeful direction or arising out of components of the specific jurisdiction analysis.

   ***Purposeful direction requirement.*** To begin with the primary focus of Plaintiffs'
argument—the Master Agreement between the Clinic and inReach—the mere existence of that
agreement is not enough to establish minimum contacts between the Clinic Defendants and
Colorado. "Although contractual obligations may create sufficient ties to establish jurisdiction,
an out-of-state resident's contract with a resident of the forum state is insufficient, standing
alone, to create personal jurisdiction." *Dental Dynamics*, 946 F.3d at 1230 (citing *Burger King*,
471 U.S. at 478, and *Benton v. Cameco Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004)); *see also,
e.g.*, *Old Republic*, 877 F.3d at 910 ("The bare fact that [a defendant] entered into a legal
relationship with . . . a Colorado entity[ ] cannot establish sufficient contacts to satisfy the
purposeful direction requirement."); *Nuclear Cardiology Sys., Inc. v. Vivek Mangla*, *M.D.*, No.
10-cv-00045-REB-CBS, 2010 WL 2135298, at *4 (D. Colo. May 25, 2010) ("Merely entering
into a contract with a Colorado resident is insufficient in itself to confer specific jurisdiction in
this forum"); *Ruggieri v. General Well Service, Inc.,* 535 F. Supp. 525, 535 (D. Colo. 1982)
("Jurisdiction is not proper in Colorado merely because one of the parties to the contract [is] a

Colorado resident."). As the Supreme Court has explained:

> [A] contract is ordinarily but an intermediate step serving to tie up prior business negotiations with *future consequences which themselves are the real object of the business transaction* . . . . it is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposely established minimum contacts with the forum.

*Burger King*, 471 U.S. at 478-79 (emphasis added).

In this case, the "future consequences" of the Master Agreement are wholly focused on Nebraska. The contract would be performed entirely in that state, with inReach providing physician contractors—required to be licensed in Nebraska and insured by "companies that are authorized to do business in Nebraska and/or by participation under the Nebraska Hospital-Medical Liability Act"—to administer services for Clinic patients in Scottsbluff, Nebraska. ECF No. 63-1 at 4, 8. inReach would further provide a Nebraska-licensed physician to serve as the medical director of orthopedic services at the Clinic in Scottsbluff, Nebraska. *Id.* at 4. And inReach agreed to comply with the policies and risk management procedures of the Clinic, a Nebraska non-profit corporation. *Id.* at 5-6. All of this was to be done under the governance of Nebraska law. ECF No. 63-2 at 4, 8, 10; *id.* at 13 ("Governing Law. This Agreement shall be construed under and shall be governed by the law of the State of Nebraska."). Indeed, there is no mention in the Master Agreement of any services to be performed outside of Nebraska—in Colorado or anywhere else—and neither Dr. MacMillan nor Ms. Wenner are licensed to practice in Colorado.

Plaintiffs thus have failed to show that the Clinic, Dr. Holloway, or Ms. Stricker purposefully directed activities toward Colorado by entering into the Master Agreement.

16

Everything about the Clinic's performance under the Master Agreement, down to the law that would apply if a dispute arose between the Clinic and inReach, confirms the Nebraska-centric focus of the arrangement. The court finds nothing in the Master Agreement suggesting that the Clinic Defendants intentionally focused some action "aimed expressly" *at Colorado* with knowledge that Plaintiffs would be injured *in Colorado*. *See Spyderco*, 2017 WL 2929548, at *2 (delineating elements of purposeful direction in the tort context).

The court next considers Plaintiffs' contention that purposeful direction toward Colorado is shown by the Clinic Defendants' supposed knowledge that "inReach was entering into contracts with health care providers to fulfil inReach's contractual obligation to them"—specifically, here, the PSA and the MLPSA—and with awareness that those third-party contracts "were specifically governed by Colorado law and contained Colorado venue provisions." Response at 9; *see also* ECF No. 63-1 at 62, 76.[6]

The court finds that the choice-of-law provisions in these agreements are of limited significance in assessing purposeful direction. Certainly, "such a provision standing alone would be insufficient to confer jurisdiction," *Burger King*, 471 U.S. at 482, and the Clinic Defendants are not themselves parties to these agreements. Indeed, the Clinic Defendants aver that they never even saw these third-party agreements until October 2022, when Plaintiffs' counsel produced them, apparently in connection with conversations in anticipation of this litigation. Supplemental Holloway Decl., ECF No. 70-1 ¶¶ 12-13. Further informing the court's assessment is the inconsistency in the PSA on the choice-of-law point. A non-competition agreement

---

[6] Plaintiffs assert that the PSA and MLPSA also contain a Colorado venue provision, *see* Response at 9, but the court is unable to locate a venue provision in the PSA or MLPSA.

executed by Dr. MacMillan and appended to the PSA explicitly provides that it "shall be
governed by, construed and enforced in accordance with the laws of the State of *Nebraska*," and
that enforcement actions "may be brought "in an appropriate state or federal court in *Nebraska*."
ECF No. 63-1 at 40 (parties "waive[] all objections based upon lack of jurisdiction or improper
or inconvenient venue of any such court" in Nebraska) (emphasis added). In short, these facts
point to no purposeful invocation of the laws of Colorado on the part of the Clinic Defendants.
*Cf. Burger King*, 471 US. at 482 (finding that a choice-of-law provision in a contract to which
the defendant himself was a party, "combined with the 20-year interdependent relationship
Rudzewicz established with Burger King's Miami headquarters, . . . reinforced his deliberate
affiliation with [Florida] and the reasonable foreseeability of possible litigation there").

      In assessing purposeful direction, the court finds it appropriate to look beyond matters of
form and to focus on substance. Here, the intentional act—the "concoct[ion]" of a story between
the Clinic Defendants and Mr. Pusey designed to lead to the termination of Plaintiffs'
employment, Am. Compl. ¶ 96[7]—was plainly not "aimed *expressly* at [the] forum state" of
Colorado. *Spyderco*, 2017 WL 2929548, at *2 (emphasis added). Rather, Nebraska was the aim
of this tortious interference: Plaintiffs were obliged to carry out their obligations under the PSA
and MLPSA (the contracts interfered with) at the Clinic, a Nebraska non-profit corporation

---

[7] "Under Colorado law, a claim for intentional interference with contract, also called tortious
interference with contract, has five elements: (1) existence of a contract between the plaintiff and
a third party; (2) knowledge of that contract by the defendant; (3) the defendant's intentional,
improper interference with that contract; (4) breach of that contract by the third party; and (5)
resulting damages to the plaintiff." *Antarctica Films Argentica, S.A. v. Gaia, Inc.*, No. 22-cv-
00500-NYW-STV, 2023 WL 2574371, at *12 (D. Colo. Mar. 20, 2023).

located in Nebraska that conducts its business entirely in Nebraska; Plaintiffs worked exclusively

in Nebraska (and are not even licensed to practice in Colorado); the "New Model" that Plaintiffs

allegedly opposed was to be implemented at the Clinic in Nebraska; Dr. Holloway and Ms.

Stricker, two of the three tortfeasors, are residents of Nebraska who live and work in that state

and have no business, financial, or property-ownership connections to Colorado; and Plaintiffs'

employment was terminated during a meeting that took place—unsurprisingly, given the

circumstances—in Nebraska, where they worked.

Far from being the "focal point" of the alleged tortious interference, *see Dudnikov*, 514

F.3d at 1075, Colorado was, at most, on the sidelines of that conduct. Neither do the facts before

the court show that the Clinic Defendants acted with knowledge that the "brunt of" the injuries

Dr. MacMillan and Ms. Wenner allegedly sustained would be felt in Colorado, *see Spyderco*,

2017 WL 2929548, at *2, a point emphasized by the fact that those providers are not licensed to

practice their craft in this state. In sum, the court respectfully declines to recommend that the

Clinic Defendants be haled into court in Colorado on the basis of contacts with this state that are

so "random, fortuitous, and attenuated." *See AST Sports*, 514 F.3d at 1058.

***Arising out of requirement.*** While the court resolves the jurisdictional question on the

purposeful direction requirement, the court briefly notes that the facts demonstrating a lack of

purposeful direction likewise compel the conclusion that Plaintiffs have not made a prima facie

showing that their injuries "arise out of" the Clinic Defendants' amorphous connection with

Colorado. Put simply, the court cannot find that the Clinic Defendants themselves have

undertaken any significant activities in this forum: Plaintiffs' claim against the Clinic

Defendants, therefore, necessarily does not arise out of the Clinic Defendants' essentially non-

existent connection with Colorado. *See Dudnikov*, 514 F.3d at 1078 (to satisfy the arising out of requirement "plaintiffs' injuries" must "'arise out of' *defendants' contacts* with the forum jurisdiction) (emphasis added).

*     *     *

Based on the foregoing analysis, the court respectfully concludes that Plaintiffs have not met their burden to show the "minimum contacts" necessary for the exercise of personal jurisdiction, either general or specific, over the Clinic Defendants in Colorado.

### B.     Fair play and substantial justice

Because the Court concludes that it lacks jurisdiction over the Clinic Defendants in this matter, it need not reach the issue of whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *See Burger King*, 471 U.S. at 477-78; *see also Melea, Ltd. v. Jawer Sa*, 511 F.3d 1060, 1065 (10th Cir. 2007) (explaining that the court need only proceed to this analysis if it concludes the defendant has sufficient minimum contacts to convey jurisdiction) (internal citation omitted). Nevertheless, to ensure completeness for purposes of this recommendation, the court briefly assesses whether it would be unreasonable, so as to violate fair play and substantial justice, to assert jurisdiction over the Clinic Defendants even if the minimum contacts standard were satisfied. The court finds that it would.[8]

---

[8] "In determining whether exercise of jurisdiction is so unreasonable as to violate 'fair play and substantial justice,' [the Tenth Circuit] consider[s]: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *OMI Holdings*, 149 F.3d at 1095.

First, there is a significant burden on the Clinic Defendants in litigating in a forum where they have no connections. The facts show that the Clinic Defendants are residents of Nebraska who conduct no business in Colorado, perform no work here, and otherwise have no ties to this jurisdiction. While litigating in a distant jurisdiction is less onerous in this age of electronic filings and "remote" appearances than in previous times, it is burdensome nonetheless. The Clinic Defendants and their counsel, who is located in Omaha, will need to be physically present in the courthouse in Denver for the trial and pretrial proceedings, and perhaps other matters. Accordingly, the court finds this factor weighs in the Clinic Defendants' favor.

The second factor in the reasonableness inquiry—the forum state's interest in adjudicating the dispute—also weighs in favor of the Clinic Defendants. None of them are Colorado residents. None conduct business here. And the alleged tortious interference occurred in Nebraska and targeted *Nebraska residents*—that is, *Plaintiffs themselves*. Notably, Plaintiffs are not licensed to practice medicine or nursing in Colorado. If the claim at issue targeted Colorado medical professionals and their provision of medical care in this state, Colorado's interest in litigating the claim undoubtedly would be higher. As the facts stand, however, the court cannot assess Colorado's interest in the dispute between Plaintiffs and the Clinic Defendants as particularly significant.

As for the "convenient and effective relief" factor, if Plaintiffs are compelled to pursue relief separately against the Clinic Defendants in Nebraska, the court finds no unreasonable burden in that. After all, Plaintiffs themselves live and work in Nebraska, where the Clinic Defendants are located. The court recognizes that Plaintiffs would prefer to pursue all of their claims at one time in one forum, but that preference does not override the other considerations in

play here. Taking into account the totality of the circumstances, the court observes that the

tortious interference claim against the Clinic Defendants is but one of six claims in the case, and

that all of the other claims are brought against inReach, a Colorado limited liability company.[9] In

this context, the claim against the Clinic Defendants emerges as a small component of Plaintiffs'

overall case. Thus, the conclusion that the Clinic Defendants cannot be pursued in this forum

does not "greatly diminish" Plaintiffs' "chances of recovery," nor does it impose a burden "so

overwhelming as to practically foreclose pursuit of the lawsuit." *See OMI Holdings*, 149 F.3d at

1097.

　　　　As for the fourth factor, the interstate judicial system's interest in obtaining the most

efficient resolution of controversies, efficiency would not be advanced by compelling the Clinic

Defendants—who are "at home" in Nebraska and not Colorado—to litigate in this forum. In a

situation such as this, where Plaintiffs have chosen to bring a lawsuit in a forum other than the

one in which they worked and where the alleged tortious interference occurred, the litigants risk

encountering a jurisdictional bar. Piecemeal litigation is best avoided, of course, but Plaintiffs

have another option: to dismiss the instant lawsuit without prejudice and to refile it in Nebraska,

a forum that they seem to believe can exercise personal jurisdiction over all defendants in this

action. *See* Response at 12-13 (asking court to transfer case to the United States District Court

for the District of Nebraska).

　　　　Finally, the fifth factor asks the court to "consider . . . the interests of the several states, in

addition to the forum state, in advancing substantive social policies," and to assess "whether the

exercise of personal jurisdiction by [Colorado] affects the substantive social policy interests of

---

[9] Even the tortious interference claim includes one Colorado defendant: Mr. Pusey.

other states[.]" *OMI Holdings*, 149 F.3d at 1097. Here, the court discerns no substantive social policy of Colorado that would be affected by allowing the claim against the Nebraska-based Clinic Defendants to be litigated in Nebraska. In light of the fact that the Clinic Defendants are alleged to have committed a tort against the contractual interests of medical professionals licensed to practice in Nebraska (and not Colorado), and who provided healthcare services in Nebraska (not Colorado), the social policy interests of Nebraska carry greater weight than those of Colorado. The court finds that this factor, like the others, weighs in the Clinic Defendants' favor.

In sum, upon an examination of all factors, the court concludes that subjecting the Clinic Defendants to litigating in Colorado would be unreasonable and inconsistent with "fair play and substantial justice." Accordingly, the court respectfully recommends that the Motion to Dismiss be granted and the action against the Clinic Defendants be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).

## II.    Jurisdictional Discovery

In concluding that Plaintiffs have failed to meet their prima facie burden to establish personal jurisdiction over the Clinic Defendants, the court also denies their request for jurisdictional discovery embedded in the Response to the Motion. *See* Response at 12 ("Should this Court conclude that Plaintiffs have failed to meet their prima facie burden, Plaintiffs request a grant of limited jurisdictional discovery followed by an evidentiary hearing[.]"). While Plaintiffs' request for discovery should have been raised in a separate motion and not in their response to the Motion to Dismiss, *see* D.C.COLO.LCivR 7.1(d), the court nevertheless addresses the substance of the request and declines to grant it.

As an initial matter, a litigant has no unfettered right to jurisdictional discovery. "District courts are endowed with broad discretion over discovery, including whether to grant discovery requests with respect to jurisdictional issues." *Dental Dynamics*, 946 F.3d at 1233 (observing that denials of such discovery requests are reviewed for abuse of discretion) (citing *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975)). "A district court abuses its discretion in denying a jurisdictional discovery request where the denial prejudices the party seeking discovery." *Id.* (citing *Dutcher v. Matheson*, 840 F.3d 1183, 1195 (10th Cir. 2016), and *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002)). Prejudice occurs where "pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." *Id.* (quoting *Sizova*, 282 F.3d at 1326). As the party seeking jurisdictional discovery, Plaintiffs bear the burden of showing prejudice. *Id.* (citing *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189 n.11 (10th Cir. 2010)).

Here, Plaintiffs have not shown that they will be prejudiced if jurisdictional discovery is not allowed. They point to no pertinent facts in dispute that might affect the conclusion that this court does not have personal jurisdiction over the Clinic Defendants. They identify no justification for anticipating that discovery will turn up facts contradicting those before the court now: that the Clinic Defendants (as well as Plaintiffs themselves) are Nebraska residents; that Plaintiffs worked exclusively in Nebraska; and that the Clinic is located in Nebraska, conducts its business entirely in Nebraska, does not solicit business in Colorado through a local agent, does not send agents to Colorado on a regular basis to solicit business, and does not hold itself out as conducting business in Colorado. At most, Plaintiffs' request for discovery, which they do

not attempt to embellish or explain, rests on mere speculation that discovery might turn up
something that might help them satisfy their burden to establish personal jurisdiction over the
Clinic Defendants. But "pure speculation as to the existence of helpful facts is insufficient, as a
matter of law, to constitute the type of prejudice that warrants reversing the district court in the
area of discovery management." *Dental Dynamics*, 946 F.3d at 1234; *see also Breakthrough
Mgmt. Grp.*, 629 F.3d at 1189-90 (holding that district court's denial of a request for
jurisdictional discovery was not an abuse of discretion where the request was based on "little
more than a hunch that it might yield jurisdictionally relevant facts"); *World Wide Ass'n of
Specialty Programs & Sch. v. Houlahan*, 138 F. App'x 50, 52 (10th Cir. 2005) (district court
does not abuse its discretion when it denies a general, unsupported motion for jurisdictional
discovery).

The record before the court indicates that it is highly unlikely Plaintiffs will discover
evidence that might show minimum contacts between any of the Clinic Defendants and this
forum. The court therefore declines to grant Plaintiffs' unsupported request for jurisdictional
discovery.

## III.    Dismissal or Transfer for Lack of Personal Jurisdiction

28 U.S.C. § 1631 provides: "Whenever a civil action is filed . . . and [the] court finds that
there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action
. . . to any such court . . . in which the action . . . could have been brought at the time it was
filed." Even though "§ 1631 contains the word 'shall,' the phrase 'if it is in the interest of justice'
grants the transferor court discretion in making a decision to transfer an action or instead to

dismiss the action without prejudice." *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 105

(10th Cir. 2012) (cleaned up).

Here, with no supporting legal argument, Plaintiffs asks the court to transfer this action to

Nebraska, *see* Response at 12-13, but irrespective of that cursory treatment of the issue, the

Tenth Circuit has directed that district courts should consider the discretionary option to transfer

a case "to cure deficiencies relating to personal jurisdiction." *Shrader*, 633 F.3d at 1249. Before

transferring a case, "[t]he transferor court must first satisfy itself that the proposed transferee

court has personal jurisdiction over the parties," and that such transfer is in the interest of justice.

*Grynberg*, 490 F. App'x at 105 (internal quotation marks and citation omitted). In assessing

whether a transfer is in the interest of justice, the court considers "whether the claims would be

time barred if filed anew in the proper forum, whether the claims alleged are likely to have merit,

and whether the claims were filed in good faith or if it was clear at the time of filing that the

court lacked the requisite jurisdiction." *Id.* (cleaned up).

Plaintiffs have not attempted to show that there would be personal jurisdiction over all

parties in Nebraska, and this court is uncertain that there would be. It may be that Mr. Pusey, a

resident of Colorado, and inReach, a Colorado limited liability company, *see* Am. Compl. ¶¶ 3,

7, would argue that the federal district court in Nebraska lacks personal jurisdiction over them.

The record before the court is silent on that point. The Tenth Circuit has recognized that "a

patent impediment" to transfer exists where defendants reside in different states because "there

[is] no single court to which the action could be transferred with any assurance that jurisdiction

would [be] proper." *Shrader*, 633 F.3d at 1249-50. And the Tenth Circuit further stated that it

was "aware of no authority even permitting, much less requiring, a district court to unilaterally

split up an action and transfer the resultant components to diverse jurisdictions under the

auspices of § 1631." *Id.* at 1249-50; *see also Kennedy v. Mountainside Pizza, Inc.*, No. 19-cv-

01199-CMA-STV, 2020 WL 4454897, at *7 (D. Colo. May 14, 2020) (recognizing that "District

courts within the Tenth Circuit consistently have applied *Shrader* to find that dismissal, rather

than transfer, is appropriate where the lawsuit 'features multiple defendants residing in different

states 'so there [is] no single court to which the action could be transferred with any assurance

that jurisdiction would have been proper'") (citations omitted), *recommendation adopted*, 2020

WL 4448771 (D. Colo. Aug. 3, 2020).

This court also has reason to question whether subject matter jurisdiction could be

sustained in the transferee court. Plaintiffs' hook for federal jurisdiction here is Dr. MacMillan's

claim under the Age Discrimination in Employment Act, with concomitant supplemental

jurisdiction over Plaintiffs' state law claims (including the tortious interference claim against the

Clinic Defendants), *see* Am. Compl. ¶¶ 9, 107-115, but inReach and Mr. Pusey have moved to

dismiss the ADEA claim for lack of subject matter jurisdiction. *See* ECF No. 61 at 12-13. While

not prejudging that issue, it is yet another factor that decreases the court's confidence that

Plaintiffs' claims ultimately could proceed in Nebraska. *Cf. Haugh v. Booker*, 210 F.3d 1147,

1150 (10th Cir. 2000) ("[A] court is authorized to consider the consequences of a transfer by

taking 'a peek at the merits' to avoid raising false hopes and wasting judicial resources that

would result from transferring a case which is clearly doomed.") (quoting *Phillips v. Seiter*, 173

F.3d 609, 610 (7th Cir. 1999)).

Having weighed all of these considerations, the court respectfully declines to exercise its

discretion to transfer this case to the United States District Court for the District of Nebraska,

and instead recommends that the action against the Clinic Defendants be dismissed without prejudice pursuant to Rule 12(b)(2) for lack of personal jurisdiction. *See, e.g.*, *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1216-17 (10th Cir. 2002) (stating that dismissal for lack of personal jurisdiction under Rule 12(b)(2) should be without prejudice); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims.") (emphasis in original).

## IV.    Attorney's Fees and Costs

The Clinic Defendants seek their attorney's fees and costs expended in connection with their preparation of the Motion to Dismiss. Motion at 18-20.[10]

The analysis of this question is informed by two Colorado statutes:

> In all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant *shall* have judgment for his reasonable attorney fees in defending the action[.]

Colo. Rev. Stat. § 13-17-201 (emphasis added); *see also* Colo. Rev. Stat. § 13-16-113(2) (mandating an award of costs in the same circumstances); *Crandall v. City of Denver*, 238 P.3d 659, 665 (Colo. 2010) ("the express statutory language of sections 13-16-113(2) and 13-17-201 mandate[s] awards of costs and attorney fees to the defendant in the event that a plaintiff's tort action is dismissed pre-trial on a C.R.C.P. 12(b) motion to dismiss").

---

[10] Plaintiffs do not attempt to refute this argument.

Section 13-17-201 "is considered to be the substantive, not procedural, Colorado law. As a consequence, when the Court entertains state law claims under the doctrine of supplemental jurisdiction, C.R.S. § 13–17–201 applies even though the dismissal technically occurs under the federal Rule 12." *Witt v. Snider*, No. 16-cv-1303-MSK-CBS, 2017 WL 7362785, at *1 (D. Colo. Oct. 20, 2017) (citing *Jones v. Denver Post Corp.*, 203 F.3d 748, 757 & n.6 (10th Cir. 2000), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)); *Advanced Career Technologies, Inc. v. John Does 1-10*, 100 F. Supp. 3d 1105, 1107 (D. Colo. 2015) ("While on its face 13-17-201 only applies to motions brought under Rule 12(b) of the Colorado Rules of Civil Procedure, the statute has been interpreted to apply to the dismissal of state claims under Federal Rule of Civil Procedure 12(b)."). The statute applies to "'injury to person,' even when such injury is purely economic." *Witt*, 2017 WL 7362785, at *1 (quoting *Infant Swimming Research v. Faegre & Benson LLP*, 335 F. App'x 707, 715 (10th Cir. 2009)). "The Tenth Circuit has held that awards of attorney fees under [§ 13-17-201] are mandatory." *Borgese v. Burba*, No. 21-cv-01134-NYW-KLM, 2022 WL 14391542, at *2 (D. Colo. Oct. 25, 2022), *report and recommendation adopted*, 2022 WL 16855687 (D. Colo. Nov. 10, 2022) (citing *Checkley v. Allied Property and Cas. Ins. Co.*, 635 F. App'x 553, 559 (10th Cir. 2016)).

For a court to award reasonable attorney fees under § 13-17-201, the Clinic Defendants must show by a preponderance of the evidence that (1) the action lies in tort, and (2) the action must be dismissed pursuant to Rule 12(b). *See, e.g.*, *Checkley*, 635 F. App'x at 559; *Campos v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-02777-CMA-KLM, 2022 WL 2290617, at *5 (D. Colo. June 23, 2022), *report and recommendation adopted*, No. 21-cv-02777-CMA-KLM, 2022 WL 2702849 (D. Colo. July 12, 2022). The court finds that the Clinic Defendants have met their

burden to show that both conditions have been met here: the claim against the Clinic Defendants

is a tort claim alleging interference with contract, and the court has concluded that it lacks

personal jurisdiction over the Clinic Defendants. Therefore, the court respectfully recommends

that, pursuant to Colorado Revised Statutes §§ 13-16-113(2) and 13-17-201, the Clinic

Defendants shall have judgment for their reasonable costs and attorney's fees in defending this

action.

**CONCLUSION**

For the foregoing reasons, it is respectfully **RECOMMENDED** that the Motion to

Dismiss, ECF No. 63, be **GRANTED** and that all claims in the Amended Complaint be

**DISMISSED WITHOUT PREJUDICE** as to Defendants Regional West Physicians Clinic,

Jeffrey Holloway, and Martha Stricker for lack of personal jurisdiction.[11] In light of this

recommendation, it is **ORDERED** that the Clinic Defendants' Motion to Stay Discovery, ECF

No. 41, is **GRANTED**.           .

For the reasons set forth above, it is **ORDERED** that Plaintiffs' request for jurisdictional

discovery is **DENIED**.

---

[11] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "*pro se* litigant has not been informed of the time period for objecting and the consequences of failing to object").

Finally, it is **RECOMMENDED** that, within 21 days of the District Court's Order on this Recommendation, if the Recommendation is adopted, the Clinic Defendants shall submit to the court a specifically itemized accounting of all attorney's fees and costs incurred in defending this action, and Plaintiffs shall have 14 days to file any objection relating to the reasonableness of the Clinic Defendants' submitted attorney fees.

DATED: November 22, 2023                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge